Electronically Filed
Supreme Court
SCWC-16-0000668
12-NOV-2019
08:25 AM

IN THE SUPREME COURT OF THE STATE OF HAWAI'I

---o0o---

STATE OF HAWAI'I
Respondent/Plaintiff-Appellee,

vs.

KEITH KAUHANE,
Petitioner/Defendant-Appellant.

SCWC-16-0000668

CERTIORARI TO THE INTERMEDIATE COURT OF APPEALS
(CAAP-16-0000668; CR. NO. 15-1-0808(4))

NOVEMBER 12, 2019

RECKTENWALD, C.J., NAKAYAMA, McKENNA, POLLACK, AND WILSON, JJ.

OPINION OF THE COURT BY RECKTENWALD, C.J.

In 2016, Keith Kauhane was convicted of Obstructing after participating in a demonstration against the construction of the Daniel K. Inouye Solar Telescope (DKIST) on the summit of Haleakalā.

The Intermediate Court of Appeals (ICA) vacated the conviction based on an error in the jury instructions, and remanded for a new trial. See State v. Kauhane, 144 Hawai'i 109, 112, 436 P.3d 1192, 1195 (App. 2018). Nevertheless, on certiorari, Kauhane asks this court to further determine: (1) whether the ICA erred in determining that the State's complaint was sufficient, despite its failure to define the statutory term "obstructs"; and (2) whether the ICA erred in its analysis of a "golden rule" objection made by the State during Kauhane's closing argument.

We hold that the complaint was defective. By failing to include the statutory definition of "obstructs," the complaint omitted an essential element of the offense of Obstructing and did not apprise Kauhane of what he was required to defend against. Even under the "liberal construction" standard applicable to charges challenged for the first time on appeal, the complaint cannot within reason be construed to charge a crime. State v. Motta, 66 Haw. 89, 657 P.2d 1019 (1983); State v. Wells, 78 Hawai'i 373, 894 P.2d 70 (1995).

Additionally, although the ICA correctly concluded that defense counsel did not make an improper "golden rule" argument, we disagree with the ICA's conclusion that the argument was otherwise improper because it misstated the law.

2

Accordingly, we vacate the ICA's judgment, and remand to the Circuit Court of the Second Circuit (circuit court) with instructions to dismiss the Obstructing charge without prejudice.

## I.  BACKGROUND

On August 20, 2015, the Maui Police Department's Specialized Emergency Enforcement Detail (SPEED) team, led by Captain Clyde Holokai (Captain Holokai), was assigned to accompany construction vehicles and equipment from the Central Maui Baseyard in Kahului to the DKIST construction site at the summit of Haleakalā.

On Crater Road, the convoy encountered fifteen to twenty protestors blocking the roadway, standing shoulder to shoulder.  When those protestors eventually cleared, seven more protestors were revealed, sitting in the middle of the roadway, chanting and praying.  These seven protestors, including Kauhane, were arrested.

## A.   Circuit Court Proceedings

### 1.    The Complaint

After his arrest, the State charged Kauhane with: (1) Failure to Disperse, in violation of Hawaiʻi Revised Statutes (HRS) § 711-1102 (2014); (2) Obstructing, in violation of HRS

3

§ 711-1105(1)(a) (2014);[1] and (3) Disorderly Conduct, in violation of HRS § 711-1101(1)(d) (2014). The complaint set forth the Obstructing charge as follows:

> Count II: [Obstructing]
> That on or about the 20th day of August, 2015, in the County of Maui, State of Hawai'i, KEITH KAUHANE, whether alone or with others and having no legal privilege to do so, did knowingly or recklessly persist to <u>obstruct</u> any highway or public passage, after a warning by a law enforcement officer to move to prevent or to cease such obstruction, thereby committing the offense of Obstructing in violation of Section 711-1105(1)(a) of the [HRS].

(Emphasis added).

Notably, the charge did not define "obstructs," which is defined in HRS § 711-1100 (Supp. 2015) as "renders impassable without unreasonable inconvenience or hazard."

## 2. Evidence

At trial,[2] the State called four witnesses to describe the protest scene. Captain Holokai explained that it was "very dim" when the convoy encountered the line of standing protestors, and that the road was "very steep and narrow." Captain Holokai further testified that as he approached the line of protestors with the SPEED team, he and the other officers "repeatedly ordered [the protestors] to get off the roadway."

---

[1] HRS § 711-1101(1)(a) (Obstructing) provides: "[a] person commits the offense of obstructing if, whether alone or with others and having no legal privilege to do so, the person knowingly or recklessly . . . [o]bstructs any highway or public passage[.]" (Emphasis added).

[2] The Honorable Richard T. Bissen, Jr. presided.

4

Captain Holokai testified that he first encountered Kauhane as the line of standing protestors dispersed. Because of Kauhane's position in the middle of the road, and the positions of the other sitting protestors, Captain Holokai explained that the convoy could not have continued past them. Captain Holokai testified that the SPEED team had to "physically pry" the sitting protestors apart, and that even after being handcuffed, "they wouldn't walk." As such, he explained, each of the seven protestors had to be removed from the roadway by stretcher.

On cross-examination, Captain Holokai explained that it took about five minutes to remove Kauhane from the roadway. Although Captain Holokai admitted that he did not specifically warn Kauhane that he would be arrested if he did not move to the side of the road, Captain Holokai explained that he had given this warning multiple times to the protestors standing in front of Kauhane.

Sergeant Russell Kapahulehua (Sergeant Kapahulehua) confirmed the events described by Captain Holokai and stated that the protestors had created a "dangerous situation." Sergeant Kapahulehua testified that although Captain Holokai might not have specifically warned Kauhane that he could be arrested, he recalled that Captain Holokai's general warnings to the group of protestors were announced "very loudly" and that the standing and

5

sitting protestors "were all pretty close together."

Rex Hunter (Hunter), the DKIST's project manager, as well as Ervin Pigao (Pigao), an employee with the State's Department of Transportation (Department), also testified for the State. Hunter, who had accompanied the convoy, testified that the materials being transported were "extraordinarily wide," and that were the materials to fall, they "could kill someone." He further testified that the convoy had to stop multiple times because of protestors as it made its way to the summit. Pigao, who did not accompany the convoy, added that he had checked the Department's records, and could confirm that the Department had not issued any licenses or permits to block the roadway.

The defense first called Professor Hokulani Holt-Padilla (Professor Holt-Padilla) to testify as an expert in the field of Hawaiian custom, culture, history, and religion. Professor Holt-Padilla explained that Haleakalā was one of the "most significant cultural and religious sites on Maui" for Native Hawaiians. Construction of the DKIST, she explained, was not just a "desecration" and an "affront" to the Hawaiian culture, but would also affect many Native Hawaiians "emotionally, spiritually, and physically."

Kauhane then testified that DKIST's construction had caused him "serious emotional harm," and that as long as the

telescope continued to be built, he and other Hawaiians would be harmed. Kauhane thus testified that he went to Crater Road to pray and to protest the mountain's desecration. He acknowledged that by going to Crater Road, he had also meant to stop the transport of the DKIST's materials, and that while praying, he was "obstructing" the middle of the road. Despite this, Kauhane denied hearing the SPEED team's warnings that he would be arrested if he failed to move.

### 3. Jury Instructions

At the close of evidence, the following instructions, which were agreed upon by both parties, were read to the jury with regard to the offense of Obstructing:

> Instruction 17
> In Count Two of the Complaint, the Defendant, KEITH KAUHANE, is charged with the offense of Obstructing. A person commits the offense of Obstructing if, whether alone or with others and having no legal privilege to do so, the person knowingly or recklessly persists to obstruct any highway or public passage, after a warning by a law enforcement officer to move to prevent or to cease such obstruction. There are three material elements of the offense of Obstructing, each of which the prosecution must prove beyond a reasonable doubt. These three elements are:
>
> [(1)]  [T]hat on or about August 20, 2015, in the County of Maui, State of Hawai'i, the Defendant, whether alone or with others and having no legal privilege to do so, obstructed any highway or public passage;
>
> [(2)]  [T]hat the Defendant persisted to obstruct any highway or public passage, after a warning by a law enforcement officer to move to prevent or to cease such obstruction; and
>
> [(3)]  [T]hat the Defendant did so knowingly or recklessly as to the above elements.

7

. . . .

Instruction 26
"Obstructs" means "renders impassable without
unreasonable inconvenience or hazard."

The jury was also given an instruction on the choice-

of-evils defense:[3]

Instruction 30
It is a defense to the offense charged that the
defendant's conduct was legally justified. The law
recognizes the "choice of evils" defense, also
referred to as the "necessity" defense.

The "choice of evils" defense justifies the
defendant's conduct if the defendant reasonably
believes such conduct is necessary to avoid an
imminent harm or evil to himself or another person.
The conduct is justifiable if the harm or evil sought
to be avoided by such conduct is greater than that
sought to be prevented by the law defining the offense
charged.

If the prosecution has not proved beyond a reasonable
doubt that the defendant's conduct was not legally
justified by the "choice of evils" defense, then you
must find the defendant not guilty of each of the
offenses. If the prosecution has done so, then you
must find that the "choice of evils" defense does not
apply.

If you find that the defendant was reckless or
negligent in bringing about the situation requiring a

---

[3]      The choice-of-evils defense is codified in HRS § 703-302 (2014),
and in relevant part, provides the following:

(1)    Conduct which the actor believes to be necessary to avoid an
       imminent harm or evil to the actor or to another is justifiable
       provided that:

       (a)   The harm or evil sought to be avoided by such conduct is
             greater than that sought to be prevented by the law defining
             the offense charged;

       (b)   Neither the Code nor other law defining the offense provides
             exceptions or defenses dealing with the specific situation
             involved; and

       (c)   A legislative purpose to exclude the justification claimed
             does not otherwise plainly appear.

8

> choice of harms or evils or in appraising the
> necessity of his conduct, the justification afforded
> by this defense is unavailable as a defense to the
> offense of Obstructing.

### 4.    Closing Arguments

The State emphasized that the "laws of Hawaiʻi [existed] for a reason" and that they needed to be followed in order to protect the community.  Acknowledging that Haleakalā was undoubtedly a sacred place to many, and that all individuals had the rights to protest, pray, and exercise their religions, the State urged the jury to find Kauhane guilty as charged because Kauhane, unlike many of the other protestors on Crater Road, had chosen to break the law.

In response, drawing upon Professor Holt-Padilla's testimony about Native Hawaiian beliefs and Kauhane's testimony about his belief of harm, the defense urged the jury to find that the choice-of-evils defense applied, and that Kauhane stayed in the middle of the road, despite it being unlawful to do so, to avert an even greater harm to himself and other Native Hawaiians. The defense argued:

> [W]eigh it out.  What's the harm versus what is he
> being imminently harmed with?  What's the difference?
> You've got to weigh it out, and you as jurors, I hope,
> will weigh in favor of my client and find that he
> believed that there was going to be imminent harm.
> You know, we all experience . . . pain in various
> ways.  We all experience mental pain and grief and
> anxiety in various ways.  Pain, grief, and anxiety,
> that equals harm.  It's the same thing.  And again,
> the only way that you can really judge as jurors the
> vastness of the harm, the grief, the pain, the anxiety
> is to walk in Kalei's [Kauhane's] shoes.

(Emphasis added).

The State objected on the basis of the "golden rule," which the circuit court sustained. The defense then rephrased its argument, omitting any reference to "walking in [Kauhane's] shoes," as follows:

> In light of Jury Instruction Number 30 [explaining the choice-of-evils defense], I'm asking that you find that my client was justified to be on the mountain at that point in time because he believed he was going to be suffering imminent harm from the desecration and the continuing desecration of Haleakalā.

### 5.   Conviction and Sentence

The jury acquitted Kauhane of the Failure to Disperse and Disorderly Conduct charges, but found him guilty of Obstructing. The circuit court then sentenced Kauhane to one day in jail with credit for time served, six months of probation, and various fines and fees.

## B.   ICA Proceedings

On appeal, Kauhane argued: (1) that the circuit court erred by failing to instruct the jury on the mitigating defense to the Obstructing charge, which would have reduced his conviction from a petty misdemeanor to a violation;[4] (2) that the

_____

[4]     HRS § 711-1105(5) provides that "Obstructing is a petty misdemeanor if the person persists in the conduct specified in subsection (1) after a warning by a law enforcement officer; otherwise it is a violation." Kauhane argued that the jury should have been instructed on this mitigating defense, because there was evidence adduced at trial that Kauhane did not hear a warning by a law enforcement officer to remove himself from the road. Because the ICA agreed with Kauhane and granted a new trial on that basis, this opinion does not discuss the parties' arguments on that issue.

State's complaint was defective because it failed to include the statutory definition of "obstructs"; and (3) that the circuit court erroneously sustained the State's "golden rule" objection, which precluded him from accurately presenting the requirements of the choice-of-evils defense to the jury.[5]

Kauhane first explained that under HRS § 711-1100, "obstructs" meant to "render[] impassable without unreasonable inconvenience or hazard." By omitting that definition from the complaint, Kauhane alleged that the State had not afforded him sufficient notice of what he was required to defend against and had violated his right to due process. Had he known the definition of "obstructs," he argued, he could have "adduced evidence . . . that his conduct did not present a hazardous situation[,]" or "could have developed a defense that his conduct[,] at worst[,] created a reasonable inconvenience, given . . . his rights to peaceably assemble and protest [] official government action." In light of these arguments, Kauhane asked for the ICA to dismiss the State's complaint without prejudice.

Kauhane also alleged that by sustaining the State's "golden rule" objection, the circuit court prevented him from properly explaining to the jury in his closing argument that it

---

[5] On appeal, Kauhane also argued that insufficient evidence supported his conviction. The ICA rejected this argument. Because Kauhane does not challenge the sufficiency of the evidence on certiorari, we do not address the issue further.

11

could contemplate Kauhane's choice-of-evils defense by "walking in [his] shoes." Thus, in the alternative, he requested a new trial on that basis.

The State agreed with Kauhane that: (1) the circuit court had erred by failing to instruct the jury on Obstructing's mitigating defense; (2) the complaint was defective; and (3) the circuit court had erred by sustaining the "golden rule" objection.

Despite its concession with respect to the complaint's deficiency, however, the State noted that because Kauhane did not object to the charge until his appeal, the Motta/Wells rule applied.[6] Under this post-conviction "liberal construction rule," the State contended that Kauhane could not show (1) that the charge was "so obviously defective that by no reasonable construction [could] it be said to charge the offense for which the conviction was had"; or (2) that he was substantially prejudiced. The State thus contended that Kauhane's conviction could not be vacated on this ground.

In its published opinion, the ICA vacated the circuit court's judgment and remanded the case for a new trial, based on

---

[6] The Motta/Wells rule derives from State v. Motta, 66 Haw. 89, 657 P.2d 1019 (1983), and State v. Wells, 78 Hawai'i 373, 894 P.2d 70 (1995). In Motta, this court adopted a "liberal construction standard for post-conviction challenges to indictments," while in Wells, we limited this standard to judicial review of charges challenged for the first time on appeal.

12

its conclusion that the court had erred by failing to instruct the jury on the mitigating defense to Obstructing.[7]  Kauhane, 144 Hawai'i at 112, 114-16, 436 P.3d at 1195, 1197-99.  The ICA rejected Kauhane's argument that the State's complaint was defective, however, and found that although the circuit court had erred in sustaining the State's "golden rule" objection, such error was harmless.  Id. at 113-14, 120-22, 436 P.3d at 1196-98, 1203-05.

To determine the sufficiency of the complaint, which, as the State pointed out, was challenged for the first time on appeal, the ICA indicated that it was applying the Motta/Wells rule.  Id. at 113, 436 P.3d at 1196.  Accordingly, it explained that it would only vacate Kauhane's conviction based on the sufficiency of the charge if he could show: (1) that the complaint could not within reason be construed to charge a crime;

---

[7]    The ICA held that the circuit court's failure to instruct the jury on the mitigating defense to Obstructing was plain error.  Kauhane, 144 Hawai'i at 114, 436 P.3d at 1197.  The ICA explained that under HRS § 711-1105(5), Obstructing could be either a petty misdemeanor or a violation, dependent on whether the individual persisted in blocking a highway or public passage after a warning by a law enforcement officer.  Id.
    Here, the ICA concluded, there was some evidence that Kauhane may not have received a warning to clear the roadway, and that therefore, his offense could have qualified as a violation.  Id. at 116, 436 P.3d at 1199. The ICA noted that Captain Holokai did not recall giving Kauhane an individual warning, that Sergeant Kapahulehua only recalled Captain Holokai speaking "very loudly" to the general group, and that Kauhane had testified that he did not hear any warning.  Id.
    The ICA thus concluded that, because evidence existed in the record to support Kauhane's contention that he may not have been warned to move, the circuit court had erred by failing to provide instructions to the jury on this mitigating defense.  Id.

13

or (2) that he was prejudiced. Id.

The ICA found that the complaint adequately charged the offense of Obstructing and that the complaint was sufficient as a matter of law. Id. at 113-14, 436 P.3d at 1196-97. Specifically, the ICA determined that the statutory definition of "obstructs" within the Obstructing statute comported with its common definition, and that the use of the term without its statutory definition would still be "readily comprehensible to persons of common understanding." Id.

Further, the ICA explained that Kauhane failed to show that he was prejudiced by the complaint. Id. at 114, 436 P.3d at 1197. Noting that the parties had agreed upon jury instructions that included the statutory definition of "obstructs," the ICA rejected Kauhane's contentions that he neither had adequate notice of the State's burden of proof nor the elements of the crime. Id.

And, although the ICA agreed with Kauhane that the circuit court erred by sustaining the State's "golden rule" objection, it concluded that this error was harmless. Id. at 122, 436 P.3d at 1203. Specifically, the ICA explained, Kauhane was not prejudiced by this error, as the argument he attempted to make – that the choice-of-evils defense entitled a jury to consider a defendant's subjective belief by placing themselves

14

"in the [defendant's] shoes" – was not proper.  Id. at 120-22,
436 P.3d at 1203-05 (citing State v. Maumalanga, 90 Hawaiʻi 58,
63, 976 P.2d 372, 377 (1988) (explaining that the choice-of-evils
defense assesses a defendant's belief under a "reasonable" person
standard).  Moreover, "[i]n light of Jury Instruction Number 30,"
which detailed the defense and included language that the
"defendant reasonably believe[d] such conduct [was] necessary,"
the ICA explained that Kauhane was able to properly assert the
choice-of-evils defense, despite his claim otherwise.  Id. at
122, 436 P.3d at 1205.

C.    **Supreme Court Proceedings**

On certiorari, Kauhane again argues: (1) that the
State's complaint was deficient for failing to include the
statutory definition of "obstructs"; and (2) that Kauhane was
prejudiced by the circuit court's erroneous sustaining of the
State's "golden rule" objection, in light of the arguments he
sought to present to the jury with respect to his choice-of-evils
defense.

## II.    STANDARD OF REVIEW

"Whether [a charge] sets forth all the essential
elements of [a charged] offense . . . is a question of law[,]
which [this court reviews] under the de novo, or right/wrong,
standard."  State v. Wheeler, 121 Hawaiʻi 383, 390, 219 P.3d

15

1170, 1177 (2009) (internal quotation marks omitted) (quoting State v. Wells, 78 Hawai'i 373, 379, 894 P.2d 70, 76 (1995) (citations omitted)).

### III. DISCUSSION

As set forth below, we conclude that the ICA erred by failing to properly apply the Motta/Wells rule and by holding that the State's complaint was sufficient. We also conclude that defense counsel's argument on the choice-of-evils defense was not improper, and that defense counsel should have been able to ask the jury to consider Kauhane's subjective belief of harm.

### A. The State's Complaint Was Insufficient.

#### 1. The ICA Erred by Failing to Apply the Motta/Wells Rule.

As an initial matter, we note that the ICA erred by misapplying the Motta/Wells rule. When a criminal defendant challenges the sufficiency of a charge in a timely manner, an appellate court will uphold that charge if: (1) it contains the elements of the offense; and (2) it sufficiently apprises the defendant of what the defendant must be prepared to meet. State v. Mita, 124 Hawai'i 385, 390, 245 P.3d 458, 463 (2010); State v. Jendrusch, 58 Haw. 279, 283, 567 P.2d 1242, 1245 (1977). In other words, "[t]he relevant inquiry . . . is whether or not the charge [has] provided the accused with fair notice of the

16

[offense's] essential elements."[8]  Mita, 124 Hawai'i at 390, 245 P.3d at 463 (citation omitted).

However, when a defendant challenges the sufficiency of a charge for the first time on appeal, an appellate court will apply a more liberal standard of review, called the Motta/Wells rule.  See, e.g., State v. Merino, 81 Hawai'i 198, 213, 915 P.2d 672, 687 (1996) (explaining that the Motta/Wells rule applies to challenges to oral charges, informations, and complaints raised for the first time on appeal).  Under the Motta/Wells rule, charges challenged for the first time on appeal are presumed valid.  Wheeler, 121 Hawai'i at 399-400, 219 P.3d at 1186-87.  Accordingly, we will only vacate a defendant's conviction under this standard if the defendant can show: (1) that the charge cannot reasonably be construed to allege a crime; or (2) that the defendant was prejudiced.  Motta, 66 Haw. at 91, 657 P.2d at 1020.

Here, because Kauhane challenged the sufficiency of the complaint for the first time on appeal, the Motta/Wells rule is applicable.  Although the ICA purported to apply that rule,

---

[8]    Although not implicated in this case, we note that in addition to including all of an offense's essential elements, a charge must also include that offense's requisite state of mind.  See State v. Gonzalez, 128 Hawai'i 314, 288 P.3d 788 (2012) (citing State v. Nesmith, 127 Hawai'i 48, 276 P.3d 617 (2012)).  If a charge fails to do so, it will not pass muster under the Motta/Wells rule.  See State v. Apollonio, 130 Hawai'i 353, 311 P.3d 676 (2013).

17

however, it appears that the ICA instead analyzed the language of the charge using the principles applicable to timely challenges. See Kauhane, 144 Hawaiʻi at 113-14, 436 P.3d at 1196-97 ("We conclude that the term 'obstructs' as defined in HRS § 711-1100 comports with its commonly understood definition, and use of that term in the . . . [c]omplaint is readily comprehensible to persons of common understanding.").

As set forth below, we respectfully disagree with that analysis, and further hold that the charge was deficient even under the Motta/Wells rule.

### 2. The Complaint was Defective Under the Standard of Review for Timely Challenges.

As described above, a charge will only be sufficient when it "provide[s] the accused with fair notice of the [offense's] essential elements." Mita, 124 Hawaiʻi at 390, 245 P.3d at 463 (citation omitted). A charge's essential elements include conduct, attendant circumstances, and results of conduct. State v. Sprattling, 99 Hawaiʻi 312, 329 n.6, 55 P.3d 276, 293 n.6 (2002) (quoting Merino, 81 Hawaiʻi at 214, 915 P.2d at 688); HRS § 702-205.

"[W]here [a] statute sets forth with reasonable clarity all essential elements of the crime intended to be punished, and fully defines the offense in unmistakable terms readily comprehensible to persons of common understanding, a charge drawn

18

in the language of the statute [will be] sufficient." State v. Nesmith, 127 Hawai'i 48, 53, 276 P.3d 617, 622 (2012) (citing Wheeler, 121 Hawai'i at 393, 219 P.3d at 1180). However, "[i]n some cases, [] a charge tracking the language of the statute defining the offense [will] violate[] an accused's due process rights. Id.

> This is so because although "some statutes in our criminal laws so clearly and specifically define the offense that nothing more is required in a charge than the adoption of language of the statute, other statutes fail to sufficiently describe the crime and a charge couched merely in the language of such a statute would violate due process."

Id. (citing State v. Israel, 78 Hawai'i 66, 73, 890 P.2d 303, 310 (1995) (emphasis added) (internal quotations and brackets omitted)).

The charge at issue here falls into this latter category because it failed to allege all of Obstructing's essential elements. By doing so, it also failed to apprise Kauhane of what he was required to defend against.

Under HRS § 711-1105(1)(a), "[a] person commits the offense of Obstructing if, whether alone or with others and having no legal privilege to do so, the person knowingly or recklessly . . . [o]bstructs any highway or public passage[.]" (Emphasis added). HRS Chapter 711 defines "obstructs" to mean "renders impassable without unreasonable inconvenience or hazard." HRS § 711-1100.

19

Here, the State's charge tracked the language of the Obstructing statute, but did not include the statutory definition of "obstructs" as provided for in HRS § 711-1100.  The State was required to include this definition, however, because "render[ing a highway or public passage] impassable without unreasonable inconvenience or hazard" comprised an essential element of the offense as a result of conduct.  See HRS § 711-1100.

Without this element, Kauhane could not have been sufficiently apprised of what he was required to defend against.  Contrary to the ICA, we do not believe that the statutory meaning of "obstructs" comports with its common meaning.  For example, Merriam-Webster's dictionary defines "obstructs" as "to block or close up by an obstacle[;] to hinder from passage, action, or operation[;] IMPEDE[ or] to cut off from sight," while Black's Law Dictionary defines "obstructs" as:

> 1.  To block or stop up (a road, passageway, etc.); to close up or close off, esp. by obstacle <obstruct the runway>.  2.  To make difficult or impossible; to keep from happening; hinder <to obstruct the peace process>.  3.  To cut off a line of vision; to shut out <the new construction obstructs our view of the road>.

See Obstruct, Merriam-Webster Collegiate Dictionary (11th ed. 2003); see also Obstruct, Black's Law Dictionary 1246 (10th ed. 2014).

Under these common definitions, any blockage of passage is sufficient to constitute obstruction.  This is not the case

20

under HRS § 711-1100, however, which is more protective of freedom of speech and assembly and provides that conduct constitutes obstruction only if it poses "<u>unreasonable</u> inconvenience or hazard." (Emphasis added).

This more protective approach is confirmed by HRS § 711-1105's commentary, as well as by the commentary on Model Penal Code (MPC) § 250.7, the model statute from which HRS § 711-1105 was substantially derived. <u>See</u> <u>State v. Aiwohi</u>, 109 Hawai'i 115, 126 n.13, 123 P.3d 1210, 1221 n.13 (2005) (explaining that the MPC as adopted in 1962 was used by the Judicial Council of Hawai'i as the guide for the Hawai'i Penal Code) (citing <u>State v. Gaylord</u>, 78 Hawai'i 127, 140 n.22, 890 P.2d 1167, 1180 n.22 (1995) (citation omitted)).

Specifically, the commentary to HRS § 711-1105 states that:

> Normally, the act of obstructing a public highway presents a great public inconvenience and serves no useful purpose. However, where the obstruction is caused by a crowd listening to a speaker, or even by a crowd protesting some official action, important goals are served by leaving the group as free from restriction as possible.

HRS § 711-1105 cmt.

The commentary on MPC § 250.7 also explains that the MPC's definition of "obstructs" – "to render impassable without unreasonable hazard or delay" – played a "<u>crucial role</u>" in confining the reach of the Obstructing statute "within <u>acceptable</u>

21

limits." ALI Model Penal Code and Commentaries Part II, § 250.7, at 403 (1980) (emphases added). And, it further explains that the MPC adopted such a "precise" definition of "obstructs" because "[n]ot every incidental impact on access to streets and highways" warranted a "restriction on speech and assembly." Id. (explaining that an individual's "presence in an obstructive gathering" was not criminal "so long as . . . the public [could] go on their way with reasonable safety and convenience"). This definition of "obstructs," the commentary notes, would therefore "preclude[] the suppression of otherwise lawful activity on the ground of some trivial inconvenience to [a] passerby," and furthermore, "give the widest possible scope to picketing, protest, and other lawful assembly, consistent with the need to protect reasonable public access to highways and other public passages." Id. at 403-04.

It is thus clear, from examining Hawai'i's Obstructing statute and its commentary, as well as the commentary of MPC § 250.7, that the statutory definition of "obstructs" does not reflect the term as commonly understood. Rather, the statutory definition of "obstructs" includes a limitation of "unreasonableness" for the specific purpose of protecting freedom of speech and freedom of association. We do not believe that a person of common understanding would be aware of this additional

22

meaning.

This analysis is confirmed by an examination of State v. Wheeler, 121 Hawai'i 383, 219 P.3d 1170 (2009), and State v. Pacquing, 139 Hawai'i 302, 389 P.3d 897 (2016). In Wheeler, this court held that a charge for Operating a Vehicle Under the Influence of an Intoxicant (OVUII) was fatally defective because it failed to include the statutory definition of "operates." 121 Hawai'i at 393, 219 P.3d at 1180. Under the statutory definition, the term "operates" meant to "drive or assume actual physical control of a vehicle upon a public way, street, road, or highway[.]" Id. at 391, 219 P.3d at 1178 (emphasis added). In contrast, the commonly understood definition of the term meant "to perform a function or operation, or [to] produce an effect[,]" regardless of where that took place. Id. at 394, 219 P.3d at 1181 (citing Black's Law Dictionary 1091 (6th ed. 1990)).

This court concluded that the statutory definition of "operates," which included the attendant circumstance of location, did "not comport with its commonly understood definition," was "not readily comprehensible to persons of common understanding," and did not provide the defendant with adequate notice of what he was required to defend against. Id. Accordingly, we held that an OVUII charge would not be sufficient unless it alleged that the offense had occurred on a public

23

roadway.  Id. at 396, 219 P.3d at 1183.

This court came to a similar conclusion in Pacquing, holding that any charge for the unauthorized possession of confidential personal information (UPCPI) would have to include the statutory definition of "confidential personal information" in order to be sufficient.  139 Hawai'i 302, 308, 389 P.3d 897, 903 (2016).  As provided by statute, the term "confidential personal information" meant "information in which an individual [had] a significant privacy interest, including but not limited to a driver's license number, a social security number, an identifying number of a depository account, a bank account number, [or] a password[.]"  Id.  This definition, we concluded, did not comport with its common meaning of "secret or private knowledge belonging or relating to a particular person or designed for use by that person."  Id.  Because the phrase "'confidential personal information' [did] not convey the extent or limits of the statutory definition[,]" we held that the UPCPI charge did not "sufficiently apprise" the defendant of what he was required to defend against.  Id.

Here, as in Wheeler and Pacquing, the State's charge against Kauhane failed to "convey the extent or limits of the statutory definition" and failed to apprise Kauhane of what he was required to defend against.  Kauhane would not have

24

"obstructed" Crater Road in violation of HRS § 711-1105 had he merely blocked it; he only would have "obstructed" the road for the purposes of the statute had he blocked it by causing an unreasonable inconvenience or hazard. Because the State was required to include the definition of "obstructs" in its charge as an essential element of the offense, and ultimately, prove beyond a reasonable doubt that Kauhane's conduct would have prevented the convoy's passage without <u>unreasonable</u> inconvenience or hazard, the charge was fatally defective and did not provide Kauhane with adequate notice.

> 3. **The Complaint was Insufficient Under the <u>Motta/Wells</u> Rule.**

As set forth above, although the ICA purported to apply the <u>Motta/Wells</u> rule, it actually applied the standard of review for an issue raised at the trial level. We hold, however, that even under the <u>Motta/Wells</u> rule, the complaint was insufficient and must be dismissed.

In <u>State v. Sprattling</u>, 99 Hawai'i 312, 317, 55 P.3d 276, 281 (2002), the defendant argued that an Assault in the Third Degree charge was fatally defective because, by alleging "injury" instead of "bodily injury," the State failed to include one of the charge's essential elements. This court rejected that argument, and instead held that it was sufficient under the <u>Motta/Wells</u> rule. <u>Id.</u> at 321, 55 P.3d at 285.

25

As an initial matter, this court explained that the charge could still "be reasonably construed to charge assault in the third degree." Id. at 320, 55 P.3d at 284. Although the charge failed to include the word "bodily," we concluded that this omission was not a fatal defect because the term "bodily" merely served as a modifier to the word "injury," and did not, on its own, constitute an essential element of the offense. Id. at 319, 55 P.3d at 283. This court also concluded that this omission did not "alter the nature and cause of the accusation such that a person of common understanding would fail to comprehend it." Id. Even without the term "bodily," a defendant could still comprehend the charge to include "bodily injury" because "bodily injury" was inherent in the common definition of "assault."[9] Id. For this reason, and because the defendant did not allege that he was prejudiced, this court held that the State's charge passed muster under the Motta/Wells rule.

In contrast to the State's charge in Sprattling, which imperfectly stated an element of the offense, here, the State's failure to include the statutory definition of "obstructs" amounted to an omission of an entire element of the offense.

_____

[9] Specifically, we held that "[t]he word 'assault' by definition implie[d] bodily injury[, as] it [was] defined as 'any intentional display of force such as would give the victim reason to fear or expect bodily harm[.]" Sprattling, 99 Hawai'i at 319, 55 P.3d at 283 (emphasis and omission in original) (citing Black's Law Dictionary 114-15 (6th ed. 1990)).

26

Thus, unlike the charge in Sprattling, the charge here cannot reasonably be construed to charge an offense because the common definition of "obstructs" did not comport with its statutory definition.  As a result, even under the more liberal Motta/Wells rule, the charge was insufficient, and accordingly, must be dismissed.  See Wheeler, 121 Hawai'i at 386, 400, 219 P.3d at 1173, 1187 (affirming the ICA's judgment, which vacated and remanded the case with instructions to dismiss without prejudice, because the charge was deficient).[10]

**B.    The State's "Golden Rule" Objection Was Incorrect.**

In addition to challenging the sufficiency of the complaint, Kauhane also argued to the ICA that the circuit court erred by sustaining the State's "golden rule" objection during his closing argument, which precluded him from informing the jurors that they could consider Kauhane's belief, for the purposes of the choice-of-evils defense, by "walking in his shoes."  Although the ICA agreed with Kauhane that the argument was not improper under the "golden rule," it further held that it was improper because it misstated the law on the choice-of-evils defense.

---

[10]    In light of our determination, we do not address whether Kauhane was prejudiced.

## 1. The "Golden Rule" Argument Did Not Apply.

As the ICA concluded, the circuit court incorrectly sustained the State's objection. Under a typical "golden rule" argument, "a lawyer asks the jurors to reach a verdict by imagining themselves or someone they care about in the place of the injured plaintiff or crime victim." Golden-rule argument, Black's Law Dictionary 807 (10th ed. 2014). These arguments are widely condemned in both civil and criminal cases because they "ask the jurors to become advocates for the plaintiff or victim and to ignore their obligation to exercise calm and reasonable judgment[.]" Kauhane, 144 Hawai'i at 121, 436 P.3d at 1204 (citing Ditto v. McCurdy, 86 Hawai'i 93, 127, 947 P.2d 961, 995 (App. 1997) (citation omitted), aff'd in part, rev'd on other grounds, 86 Hawai'i 84, 947 P.2d 952 (1997)). As the ICA noted, unlike a typical "golden rule" argument, the defense's argument in the instant case did not attempt to inflame the passions of the jury. Id. Furthermore, the "golden rule" argument did not apply because Kauhane, who asked the jury to "walk in [his] shoes" for the purposes of the choice-of-evils defense, was a defendant, rather than a civil plaintiff or victim. Id. at 122, 436 P.3d at 1205. Accordingly, we agree with the ICA that it was error for the circuit court to sustain the State's objection when it was based on that ground.

28

## 2.    A Defendant's Subjective Belief of Harm is Relevant For the Purposes of the Choice-of-Evils Defense.

Although the ICA correctly concluded that the circuit court erred in sustaining the State's objection, we disagree with its analysis of whether that error was harmless.  Specifically, the ICA concluded that defense counsel's statement to the jury – that "the only way to judge the vastness of the harm to Kauhane was to walk in [his] shoes" – was improper for the purposes of the choice-of-evils defense because it failed to incorporate a reasonable person standard.[11]  Kauhane, 144 Hawai'i at 122, 436 P.3d at 1205 (citing Maumalanga, 90 Hawai'i at 58, 976 P.2d at 372).

Thus, it appears the ICA was suggesting that defense counsel was misstating the law by not referring to the reasonableness of Kauhane's belief.  However, although Kauhane's belief had to be objectively reasonable, it was also necessary that Kauhane, in fact, subjectively held such a belief.  Thus, it

---

[11]    In Maumalanga, 90 Hawai'i at 58, 976 P.2d at 372, this court held that "all of the elements of the choice of evils defense [were] contained within the express language of HRS § 703-302[,]" and further, that any "common law formulations . . . [were] superseded by the adoption of the Hawai'i Penal Code."  See id.; see also State v. Friedman, 93 Hawai'i 63, 71, 996 P.2d 268, 276 (2000).  This court based its ruling on the concurring and dissenting opinion of then-Judge Acoba, who acknowledged in the ICA that "[t]he term 'believes' in HRS § 703-302 meant 'reasonably believes[,]'" and further, that "this definition [of belief] . . . was intended by the legislature to incorporate a 'reasonable [person] standard.'"  See State v. Maumalanga, 90 Hawai'i 96, 112 n.3, 976 P.2d 410, 426 n.3 (App. 1998); HRS § 703-300 ("In this chapter, unless a different meaning is plainly required: 'Believes' means reasonably believes"); HRS § 703-302 supp. cmt. (explaining that the legislature adopted a reasonable person standard for the choice-of-evils defense).

was proper for Kauhane's counsel to address Kauhane's subjective belief in his closing argument.  Moreover, we do not interpret Kauhane's argument as suggesting that the jury improperly disregard the requirement that the belief be reasonable.  Thus, the ICA incorrectly concluded that defense counsel's argument was improper.

## IV.  CONCLUSION

For the reasons set forth above, we vacate the ICA's January 2, 2019 Judgment on Appeal and the circuit court's September 9, 2016 Judgment of Conviction and Probation, and remand the case to the circuit court with instructions to dismiss without prejudice.

| | |
|---|---|
| Hayden Aluli<br>for petitioner | /s/ Mark E. Recktenwald |
| | /s/ Paula A. Nakayama |
| Gerald K. Enriques<br>(Richard K. Minatoya<br>on the brief) | /s/ Sabrina S. McKenna |
| for respondent | /s/ Richard W. Pollack |
| | /s/ Michael D. Wilson |

