**Electronically Filed
Intermediate Court of Appeals
CAAP-23-0000512
29-JAN-2025
11:01 AM
Dkt. 81 SO**

NO. CAAP-23-0000512

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI


STATE OF HAWAIʻI, Plaintiff-Appellee, v.
PERCIVAL AGTINA, Defendant-Appellant

APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CASE NO. 1CPC-20-0000610)


SUMMARY DISPOSITION ORDER
(By: Leonard, Acting C.J., and Wadsworth, J.,
with Guidry, J., dissenting)

Defendant-Appellant Percival Agtina (**Agtina**) appeals from the Judgment of Conviction and Sentence (**Judgment**) entered on August 9, 2023, in the Circuit Court of the First Circuit (**Circuit Court**).[1] After a jury trial, Agtina was convicted of one count of Sexual Assault in the First Degree, in violation of Hawaii Revised Statutes (**HRS**) § 707-730(1)(c)[2] and two counts of

---

[1]     The Honorable Faʻauuga Toʻotoʻo presided.

[2]     HRS § 707-730 (2014) states, in relevant part:

> **Sexual assault in the first degree.**  (1) A person commits the offense of sexual assault in the first degree if:
>
> . . . .
>
> (c)     The person knowingly engages in sexual penetration with a person who is at least fourteen years old but less than sixteen years old; provided that:
>
> (i)     The person is not less than five years older than the minor; and
>
> (ii)    The person is not legally married to

Sexual Assault in the Third Degree (**Sexual Assault 3**), in violation of HRS § 707-732(1)(c).[3/]

On appeal, Agtina contends that: (1) the deputy prosecuting attorney (**DPA**) "committed misconduct in appealing to the passion[s] and prejudice[s] of the jury throughout the trial and misstating the law during rebuttal arguments"; (2) the Circuit Court erred in permitting the State's expert witness, Dr. Alexander Bivens (**Dr. Bivens**), "to give profile evidence against Agtina"; (3) Counts 2 and 4 of the Complaint and corresponding jury instructions "fail[ed] to define 'genitalia' and thus fail[ed] to give proper notice to Agtina"; and (4) "Agtina received ineffective assistance of counsel . . . ."

After reviewing the record on appeal and the relevant legal authorities, and giving due consideration to the issues raised and the arguments advanced by the parties, we resolve Agtina's contentions as follows, and vacate.

(1) In his first point of error, Agtina contends that the DPA engaged in multiple acts of misconduct "in appealing to the passion and prejudice of the jury throughout the trial[,]" including improper remarks during voir dire, opening statements, and her closing and rebuttal arguments. In light of our ruling on Agtina's second point of error (see infra), we do not reach the issues raised in his first point.

(2) In his second point of error, Agtina contends that

the minor[.]

[3/]    HRS § 707-732 (2014) states, in relevant part:

**Sexual assault in the third degree.** (1) A person commits the offense of sexual assault in the third degree if:

. . . .

(c)    The person knowingly engages in sexual contact with a person who is at least fourteen years old but less than sixteen years old or causes the minor to have sexual contact with the person; provided that:

(i)    The person is not less than five years older than the minor; and

(ii)    The person is not legally married to the minor[.]

2

the Circuit Court "should have precluded [Dr.] Bivens from testifying regarding the typical characteristics and behavior of 'child molesters.'" Agtina argues that Dr. Bivens's "testimony regarding typical child molesters amounted to improper profile evidence, and any minimal probative value that this evidence had was substantially outweighed by the danger of unfair prejudice, confusion of the issues, and misleading the jury." Relatedly, Agtina argues that "the State relied heavily in closing on tying Agtina to Bivens'[s] testimony[,]" in order to brand Agtina as having the "mind of a molester."

In State v. McDonnell, 141 Hawaiʻi 280, 409 P.3d 684 (2017), the supreme court reviewed a challenge to Dr. Bivens's testimony in a different child sexual abuse case. There, Dr. Bivens "testified with regard to the dynamics of child sexual abuse, including delayed reporting and underreporting by victims of abuse, and 'grooming' techniques typically used by abusers. Bivens'[s] testimony included statistics regarding how often abuse occurs in the child's home, and how frequently it involves individuals who are known to the child." Id. at 283, 409 P.3d at 687. Like Agtina, McDonnell argued that Dr. Bivens's testimony was irrelevant, was unduly prejudicial, and improperly profiled McDonnell as a child molester. The supreme court held that the family court did not abuse its discretion in admitting most of Dr. Bivens's testimony since the testimony helped explain the interaction between the minor child and the defendant, and its probative value outweighed its prejudicial effect. Id. However, the court ruled that Dr. Bivens's use of certain statistics regarding the "personal characteristics of abusers" – i.e., that "85 percent of the time the child has a pre-existing non-sexual relationship with their molester" and "100 percent of incest offenders report molesting in their own home" – constituted improper profile testimony that was unfairly prejudicial to the defendant. Id. at 297, 409 P.3d at 701 (ellipsis omitted).

Here, Agtina points to three portions of Dr. Bivens's testimony that he claims constituted improper profile evidence:

> (1) Child molesters "are people that they already
> know. And unbeknownst to the child, it is

3

probably the case that the molester has intentionally inserted themselves or affiliated with the child or the child's family in order to get access to the child and has established a nonsexual relationship in anticipation of eventually converting it to a molestation relationship."

(2) "[A] majority of molesters reported molesting with others present. Sometimes the others were children. Sometimes they were potentially protective adults. And, yeah, about a quarter of molesters admitted to committing molestation on the same bed with a potentially protective adult present. There's some additional dynamics."

(3) "There are two places that are most -- the most common sites for child sex -- sexual abuse to occur. The first is the child's home, and the second is the molester's home. And in the case of incest, this is the same place."

In response, the State points out that, as in McDonnell, Dr. Bivens testified in this case that child molesters do not fit a particular type of profile and that "there's no way to determine if somebody is a child molester" as "[t]here are no demographic characteristics or any sort of profiling evidence that can be used to identify a child molester." The State argues that the challenged testimony of Dr. Bivens is proper under McDonnell.

Agtina contends that Dr. Bivens's testimony "regarding the behavior and character of typical child molesters" nonetheless "guided the jury to the conclusion that Agtina was guilty because he fit the profile of a child molester." Agtina notes that although Bivens did not testify using percentages, he used equivalent terms such as "probably" and "majority." Agtina further contends that the DPA relied heavily in closing on tying Agtina to Bivens's profile testimony, specifically by referencing his testimony and then repeating the phrase "mind of a molester" five times. Indeed, the DPA stated, in relevant part:

Now, . . . you heard testimony from an expert. And he talked about the mind of a molester and what they think about when they're thinking of the person, that child they're molesting. In this case, it was a 15-year-old to -- a 15-year-old -- 11- to a 15-year-old [female (**Minor**)]. The mind of a molester, think about asking her, do you have a boyfriend? Do you still -- are you still a virgin? Right

4

before he sexually penetrates her and puts his penis into her vagina, he's asking these questions. <u>The mind of a molester</u>. Even afterwards, <u>the mind of a molester</u>, when he comforts her -- talks about comforting her, you don't need a boy, referring to someone her age. You got a man; right? You're beautiful. <u>Mind of a molester</u>.

. . . .

[Dr. Bivens] . . . doesn't know [Minor]. He's talking to you about the studies, and that's applied to all children who are subjected to child sex -- sex assault. And he said -- told you a lot of things, a lot of good information to help you understand what [Minor] was going through.

Most children know their molester. Dad in the home. Most molesters are adults obtaining sexual gratification from sexual contact with a child. That's what the defendant did. <u>Consistent</u>.

. . . .

There's also studies that talk about children get molested in the same bed with others in it. And it -- <u>mind of the molester</u>, it's that sick pleasure. Okay? It's been studied. You've heard the expert. It's about the total control and domination that defendant had over [Minor].

(Emphases added.)

In <u>McDonnell</u>, the court ruled that Dr. Bivens's testimony on the abuse process did not constitute improper profile evidence. 141 Hawaiʻi at 296, 409 P.3d at 700. It reasoned in part:

Here, Dr. Bivens explicitly testified that "there is not" a typical child molester profile and that it is not possible to look at "demographic characteristics" or "personality characteristics" to determine whether someone is a child molester. Dr. Bivens did not know the specific facts of this case, and thus could not have tailored his testimony to unfairly prejudice or profile McDonnell as a child molester. <u>Further, the State did not argue in closing that McDonnell was a child molester because he had certain characteristics or exhibited certain behaviors</u>. Thus, McDonnell's argument that Dr. Bivens'[s] testimony "provided the avenue for the jury to conclude that McDonnell was guilty merely because he fit the profile of a child molester" is unconvincing.

<u>Id.</u> (emphasis added).

In this case, the State used Dr. Bivens's testimony to make the very argument it did not make in <u>McDonnell</u>. Indeed, the DPA explicitly and repeatedly argued that Agtina had the "mind of a molester" based on personal characteristics or behaviors that Dr. Bivens had testified are typical of child molesters. Whatever value Bivens's testimony on this subject served in

explaining the interaction between Minor and Agtina, it was far outweighed by the unfair prejudicial effect of the State's closing argument, which branded Agtina as a child molester based on a profile that the DPA inferred from Bivens's testimony.  The evidence as argued was unfairly prejudicial to Agtina and should have been excluded under Hawaiʻi Rules of Evidence Rule 403.

Further, on this record, we cannot conclude that the admission of this evidence was harmless beyond a reasonable doubt.  Accordingly, Agtina's convictions must be vacated.

(3) In his third point of error, Agtina contends that Counts 2 and 4 of the Complaint, which charged him with separate incidents of Sexual Assault 3, "fail[ed] to define 'genitalia' and thus fail[ed] to give proper notice to Agtina."  He challenges the related jury instructions on the same basis.

In addressing a defendant's indictment challenge, the supreme court recently stated:

> Under article I, section 14 of the Hawaiʻi Constitution, those accused of crimes have the right "to be informed of the nature and cause of the accusation" against them.  Defendants may challenge indictments for failure to charge an offense "at any time during the pendency of the proceeding" because of "the significant consequences associated with omitting an essential and material element in an oral charge" or indictment.  State v. Sprattling, 99 Hawaiʻi 312, 318, 55 P.3d 276, 282 (2002) (quotation omitted).
>
> While indictments can be challenged at any point during the proceeding, different standards apply to "post-conviction challenges."  [State v. ]Motta, 66 Haw. [89,] 91, 657 P.2d [1019,] 1020[ (1983)].  Under the Motta/Wells framework, "we will not reverse a conviction based upon a defective indictment unless the defendant can show prejudice or that the indictment cannot within reason be construed to charge a crime."  Id.  The liberal construction standard "essentially prescribes a presumption of validity on indictments that are challenged subsequent to a conviction."  Sprattling, 99 Hawaiʻi at 318, 55 P.3d at 282.

State v. Tran, 154 Hawaiʻi 211, 224, 549 P.3d 296, 309 (2024).

The same principles apply here, where Agtina challenges the sufficiency of Counts 2 and 4 of the Complaint for the first time on appeal.  See id. at 226, 549 P.3d at 311 (holding that "where . . . a charge challenge is raised after a guilty verdict has been returned . . . the Motta/Wells rule applies"); see State v. Kuhane, 145 Hawaiʻi 362, 370, 452 P.3d 359, 367 (2019)

6

(applying the <u>Motta</u>/<u>Wells</u> rule to the sufficiency challenge to a complaint).

Applying the <u>Motta</u>/<u>Wells</u> liberal construction rule, we conclude that Counts 2 and 4 were not defective. First, Agtina has not established that he was prejudiced by these charges. There is nothing in the record to suggest that he was misled or would have defended the case differently if the indictment contained the definition of "genitalia." <u>See</u> <u>Tran</u>, 154 Hawaiʻi at 226, 549 P.3d at 311. Thus, we are not persuaded that he was prejudiced by Counts 2 and 4 of the Complaint. <u>See</u> <u>id.</u>

Second, Counts 2 and 4 were sufficiently detailed to charge a crime. Counts 2 and 4 began with the following respective paragraphs:

> <u>COUNT 2</u>: On or about October 27, 2018, to and including December 28, 2019, in the City and County of Honolulu, State of Hawaiʻi, . . . AGTINA did knowingly engage in sexual contact with [Minor], who was at least fourteen years old but less than sixteen years old, by placing his hand on her genitalia, and . . . AGTINA was not less than five years older than [Minor] and was not legally married to [Minor], and knew he was not legally married to [Minor], thereby committing the offense of Sexual Assault in the Third Degree, in violation of Section 707-732(1)(c) of the Hawaiʻi Revised Statutes.

> <u>COUNT 4</u>: On or about December 29, 2019, in the City and County of Honolulu, State of Hawaiʻi, . . . AGTINA did knowingly engage in sexual contact with [Minor], who was at least fourteen years old but less than sixteen years old, by placing his hand on her genitalia, and . . . AGTINA was not less than five years older than [Minor] and was not legally married to [Minor], and knew he was not legally married to [Minor], thereby committing the offense of Sexual Assault in the Third Degree, in violation of Section 707-732(1)(c) of the Hawaiʻi Revised Statutes.

Immediately after these respective paragraphs, Counts 2 and 4 each alleged:

> Pursuant to Section 707-700 of the Hawaiʻi Revised Statutes, "married" includes persons legally married, and a male and female living together as husband and wife regardless of their legal status, but does not include spouses living apart.

> Pursuant to Section 707-700 of the Hawaii Revised Statutes, "sexual contact" means any touching, other than acts of "sexual penetration", of the sexual or other intimate parts of another, or of the sexual or other intimate parts of the actor by another, whether directly or through the clothing or other material intended to cover the sexual or other intimate parts.

> Pursuant to Section 707-700 of the Hawaiʻi Revised

Statutes, "sexual penetration" means:

> (1) Vaginal intercourse, anal intercourse, fellatio, deviate sexual intercourse, or any intrusion of any part of a person's body or of any object into the genital or anal opening of another person's body; it occurs upon any penetration, however slight, but emission is not required. As used in this definition, "genital opening" includes the anterior surface of the vulva or labia majora; or

> (2) Cunnilingus or anilingus, whether or not actual penetration has occurred.

> Pursuant to Section 707-700 of the Hawaiʻi Revised Statutes, "deviate sexual intercourse" means any act of sexual gratification between a person and an animal or a corpse, involving the sex organs of one and the mouth, anus, or sex organs of the other.

> If convicted of this offense or any included felony offense, . . . AGTINA may be subject to sentencing in accordance with Section 706-661 and Section 706-662(4)(a) of the Hawaiʻi Revised Statutes where he is a multiple offender in that he is being sentenced for two or more felonies, and an extended term of imprisonment is necessary for the protection of the public.

Counts 2 and 4 each included all material elements outlined in HRS § 707-732, citing that statute specifically. Each count also provided the statutory definitions of "sexual contact" and related terms.

Generally, "where a statute sets forth with reasonable clarity all essential elements of the crime intended to be punished, and fully defines the offense in unmistakable terms readily comprehensible to persons of common understanding, a charge drawn in the language of the statute is sufficient." Tran, 154 Hawaiʻi at 226, 549 P.3d at 311 (brackets omitted) (quoting State v. Jendrusch, 58 Haw. 279, 282, 567 P.2d 1242, 1245 (1977)). Additonally, when reviewing "whether an offense has been sufficiently pleaded," we "interpret a charge as a whole, employing practical considerations and common sense." Sprattling, 99 Hawaiʻi at 318-19, 55 P.3d at 282-83.

Here, Counts 2 and 4 included the material elements of the offense and all the relevant statutory definitions. A person of common understanding would know from reading these counts that Agtina was accused of violating HRS § 707-732 by knowingly engaging in (1) sexual contact (2) with Minor, who was at least fourteen years old but less than sixteen years old, and to whom he was not married (3) on or about the specified dates (4) in the

City and County of Honolulu. The Complaint outlined the requisite mens rea and properly defined sexual contact according to its statutory definition. See Tran, 154 Hawaiʻi at 227, 549 P.3d at 312 (citing State v. Wheeler, 121 Hawaiʻi 383, 393, 219 P.3d 1170, 1180 (2009)). Further, a person of common understanding would know that the term "genitalia," as used in Counts 2 and 4 (*i.e.*, "by placing his hand on her genitalia"), refers to Minor's external sex organs. See Webster's Encyclopedic Unabridged Dictionary 797 (1996 ed.) (defining "genitalia" to mean "the organs of reproduction, esp. the external organs"). Counts 2 and 4 "'sufficiently apprised' [Agtina] of what he needed to 'be prepared to meet,' [State v. ]Wells, 78 Hawaiʻi [373,] 379-80, 894 P.2d [70,] 76-77[ (1995)], and 'provided him with fair notice of the offense's essential elements,' Kauhane, 145 Hawaiʻi at 370, 452 P.3d at 367 (brackets and quotation omitted)." Tran, 154 Hawaiʻi at 227, 549 P.3d at 312 (original brackets omitted). Liberally construed, Counts 2 and 4 each charged a crime. See id.

Given our ruling on Agtina's second point of error (see supra), we do not reach his contention that the jury instructions for Counts 2 and 4 were erroneous because they did not define the term "genitalia."

(4) For the same reason, we do not reach Agtina's contention that he received ineffective assistance of counsel.

For the reasons discussed above, we vacate the Judgment of Conviction and Sentence entered on August 9, 2023, in the Circuit Court of the First Circuit, and remand the case for a new trial.

DATED: Honolulu, Hawaiʻi, January 29, 2025.

On the briefs:

Henry P. Ting,
Deputy Public Defender,
for Defendant-Appellant.

Stephen K. Tsushima,
Deputy Prosecuting Attorney,
City & County of Honolulu,
for Plaintiff-Appellee.

/s/ Katherine G. Leonard
Acting Chief Judge

/s/ Clyde J. Wadsworth
Associate Judge

**DISSENTING OPINION BY GUIDRY, J.**

For the reasons set forth below, I respectfully disagree with the majority that Dr. Bivens' testimony "should have been excluded under Hawai'i Rules of Evidence [(**HRE**)] Rule 403" because "[t]he evidence <u>as argued</u> was unfairly prejudicial to Agtina[.]"  (Emphasis added).

The question of whether expert witness testimony should have been excluded under HRE Rule 403 is reviewed for abuse of discretion.  <u>Kealoha v. County of Hawaii</u>, 74 Haw. 308, 323, 844 P.2d 670, 677 (1993) (reviewing a trial court's ruling regarding the admission of evidence, pursuant to HRE 403, under the abuse of discretion standard).

I do not think that Dr. Bivens' testimony improperly "profiled" Agtina.  Dr. Bivens testified regarding "the general dynamics of child sexual abuse."  <u>See</u> <u>State v. McDonnell</u>, 141 Hawai'i 280, 295, 409 P.3d 684, 699 (2017) (concluding in that case that "Dr. Bivens was appropriately permitted to testify regarding the dynamics of the relationship between child victims of sexual abuse and their abusers").  Dr. Bivens testified that, "[he did not] know anything about this particular case" and that "[he did not] even know the defendant's name[.]"  Moreover, Dr. Bivens expressly clarified that "there's no way to determine if somebody is a child molester, other than whether the individual molests a child or not[,]" as "[t]here are no demographic

characteristics or any sort of profiling evidence that can be used to identify a child molester."

I therefore disagree with the majority that Dr. Bivens' testimony should have been excluded because the State "used Dr. Bivens's testimony" to "explicitly and repeatedly argue[] that Agtina had the 'mind of a molester' based on personal characteristics or behaviors that Dr. Bivens had testified are typical of child molesters." It was the prosecutor who used Dr. Bivens' testimony to characterize Agtina as having the "mind of a molester" during closing argument.

A trial court cannot know with certainty, at the time expert testimonial evidence is admitted, how a prosecutor might attempt to characterize or use that evidence in the closing argument. But it is reasonable for a trial court to expect that the prosecutor will not use and characterize otherwise admissible testimonial evidence in a way that "profiles" or otherwise unfairly prejudices a defendant. See State v. Underwood, 142 Hawai'i 317, 326, 418 P.3d 658, 667 (2018) ("A prosecutor, moreover, has the responsibility of a minister of justice and not simply that of an advocate.") (cleaned up).

I cannot conclude, therefore, that the circuit court abused its discretion by not excluding evidence that was later used by the prosecutor during closing argument to create what the majority characterizes as an "unfair prejudicial effect."

If a prosecutor's use or characterization of evidence during closing argument constitutes prosecutorial misconduct, the defendant's judgment of conviction may be vacated on that basis.

For the foregoing reasons, I respectfully disagree with the majority's decision to vacate the Judgment on the ground that Dr. Bivens' testimony should have been excluded under HRE Rule 403. I would therefore address the remaining points of error, including the question of whether the prosecutor committed prosecutorial misconduct.[1]

/s/ Kimberly T. Guidry
Associate Judge

---

[1] It appears that Agtina did not object below to the prosecutor's closing argument. And although Agtina raised prosecutorial misconduct as a point of error on appeal, Agtina did not specifically argue on appeal that the prosecutor's use of the phrase "mind of a molester" constituted prosecutorial misconduct. Nevertheless, this court may review statements made by the prosecutor during closing argument for plain error. State v. Fox, 70 Haw. 46, 55, 760 P.2d 670, 675 (1988) ("[W]here plain errors were committed and substantial rights were affected thereby, the errors 'may be noticed although they were not brought to the attention of the [trial] court.' . . . And we may notice 'plain error' even when 'not presented' by the appellant.") (quoting Hawai'i Rules of Penal Procedure Rule 52(b) and Hawai'i Rules of Appellate Procedure Rule 28(b)(4)(D)).